UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RONALD B.,

Plaintiff,

v. 1:20-CV-0904 (WBC)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

APPEARANCES: OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC
Counsel for Plaintiff
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

KENNETH HILLER, ESQ.
SAMANTHA VENTURA, ESQ.

U.S. SOCIAL SECURITY ADMIN.
OFFICE OF REG'L GEN. COUNSEL – REGION II
Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

ARIELLA ZOLTAN, ESQ.
CATHARINE ZURBRUGG, ESQ.

William B. Mitchell Carter, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 19.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

## I. RELEVANT BACKGROUND

**A. Factual Background**

Plaintiff was born in 1984. (T. 85.) He completed the 11th grade. (T. 213.) Generally, Plaintiff's alleged disability consists of a back impairment. (T. 212.) His alleged disability onset date is December 18, 2012. (T. 208.) His date last insured is March 31, 2016. (*Id.*) His past relevant work consists of cleaner and laborer. (T. 213)

**B. Procedural History**

On May 29, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 85.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 21, 2016, Plaintiff appeared before the ALJ, Stephen Cordovani. (T. 36-67.) On December 21, 2016, ALJ Cordovani issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 17-35.) On August 7, 2017, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

On March 4, 2019, the United State District Court Western District of New York entered a decision and order remanding Plaintiff's case for further proceedings. (T. 852.) On March 25, 2019, the AC issued a Notice of Order of Appeals Council Remanding Case to Administrative Law Judge. (T. 863.) On February 10, 2020, Plaintiff again appeared before ALJ Cordovani. (T. 780-826.) On April 6, 2020, ALJ Cordovani issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 757-770.) Plaintiff again timely sought judicial review in this Court.

**C. The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 760-770.) First, the ALJ found Plaintiff met the insured status requirements through March 31, 2016 and Plaintiff had not engaged in substantial gainful activity since December 18, 2012. (T. 760.) Second, the ALJ found Plaintiff had the severe impairments of: low back disc herniations of the lumbar spine with abutment of the L4 and L5 nerve roots and bilateral carpal tunnel syndrome. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 762.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except:

> he can lift, carry, push, and pull up to 50 pounds occasionally, 20 pounds frequently, and 10 pound[s] continuously. He can sit 2 hours continuously and 5 hours total during the workday; can stand 3 hours continuously and 4 hours total; and can walk 4 hours continuously and 5 hours total during the workday. He can make frequent use of right foot controls. He can occasionally use ladders, ropes, or scaffolds. He can occasionally crawl. He can frequently balance and stoop. He has no limits pertaining to using ramps or stairs or for kneeling and crouching. He can perform no work with sharp instruments. He can frequently handle and finger. He can occasionally drive. He can face occasional exposure to extreme cold and frequent exposure to unprotected heights and moving mechanical parts. He must avoid more than frequent exposure to high humidity, concentrated fumes, odors, dusts, gases, poor ventilation, other respiratory irritants, and high heat. He can face up to moderate noise exposure.

(T. 763.)[1] Fifth, the ALJ determined Plaintiff unable to perform his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 768-770.)

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ improperly evaluated the opinion of Nurse Practitioner Christine Klemp. (Dkt. No. 15 at 21-24.) Second, and lastly, Plaintiff argues the RFC finding is unsupported by substantial evidence. (*Id*. at 24-27.) Plaintiff also filed a reply in which he deemed no reply necessary. (Dkt. No. 18.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ's step two finding of no severe mental impairments was supported by substantial evidence in the record and reasonably discounted NP Klemp's opinion regarding Plaintiff's mental capacity. (Dkt. No. 17 at 10-20.) Second, and lastly, Defendant argues substantial evidence supported the ALJ's finding that Plaintiff had the RFC to frequently finger and handle non-sharp objects. (*Id*. at 20-28.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*,

can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(a), 416.967(a).

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Opinion of NP Klemp

Plaintiff argues the ALJ failed to properly weigh NP Klemp's opinion because the ALJ did not consider the factors outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c)[2].

---

[2] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, although the agency's final decision was issued on May 2, 2018, after the effective date of the final rules, Plaintiff filed his claim before March 27, 2017. Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

(Dkt. No. 15 at 23.) Further, Plaintiff argues the ALJ failed to cite any specific evidence to support his determination that NP Klemp's opinion was inconsistent with treatment notations. (*Id*. at 22.)

In general, ALJs are not required to afford the same level of deference to the opinions of "other sources," such as nurse practitioners, as they are to the opinions of "acceptable medical sources," like physicians. *See* 20 C.F.R. §§ 404.1502, 404.1513(a),(d); 416.913(a),(d); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). "[W]hile the ALJ is certainly free to consider the opinions of ... 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 F. App'x. 105, 108 (2d Cir. 2008). Nonetheless, "other source" opinions are important, and ALJs are required to evaluate them in some depth. SSR 06-03p, 2006 WL 2329939, at *3; *see Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (stating opinion of nurse practitioner who treated claimant on regular basis entitled to "some extra consideration").

In evaluating opinions of "other sources," the ALJ should use the same factors as are used to evaluate the opinions of "acceptable medical sources." SSR 06-03p, 2006 WL 2329939, at *4. These factors, include the length of the treatment relationship, the frequency of evaluation, the degree to which the medical source provided evidentiary support for his or her opinions, the opinions' consistency with the record as a whole, and any other relevant factors. *Id.*; *see* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Evans v. Colvin*, 649 F. App'x. 35, 38-39 (2d Cir. 2016) (an ALJ must weigh opinion of treating non-medical source under factors outlined in 20 C.F.R. § 404.1527(c)).

On January 21, 2020, NP Klemp completed a medial source statement form. (T. 1281-1285.) NP Klemp indicated she treated Plaintiff monthly for cervicalgia, low back pain, and radiculopathy in cervical and lumbosacral region. (T. 1281.) She completed sections of the form asking her to characterize the nature, location, frequency, precipitating factors, and severity of Plaintiff's pain; clinical and objective signs; and treatment and response to treatment. (*Id.*) When asked if Plaintiff was a malingerer, she answered "no." (T. 1282.) When asked if "emotional factors" contribute to Plaintiff's symptoms, she answered "no." (*Id.*) When asked if Plaintiff's impairments were reasonably consistent with his symptoms and functional limitations provided in the form, she answered "yes." (*Id.*) When asked how often during a typical workday Plaintiff's experience of pain or other symptoms would be severe enough to interfere with attention and concertation needed to perform even simple work tasks, NP Klemp checked "frequently." (*Id.*) When asked to what degree Plaintiff could tolerate work stress, NP Klemp checked "incapable of even 'low stress' jobs." (*Id.*) When asked to provide functional limitations, NP Klemp declined to answer and instead wrote "the remainder of form requires a [functional capacity evaluation]." (*Id.*)

Overall, the ALJ afforded NP Klemp's statement "little weight." (T. 768.) Contrary to Plaintiff's assertion, the ALJ considered the factors outlined in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) in evaluating NP Klemp's opinion. (Dkt. No. 15 at 22-23.) Plaintiff asserts NP Klemp is a specialist who treated Plaintiff many times. (*Id*. at 22.) Indeed, the ALJ noted NP Klemp treated Plaintiff "on numerous occasions" and is a "specialist." (T. 768.) Therefore, the ALJ properly considered NP Klemp's treatment

relationship and treatment frequency. 20 C.F.R. §§ 404.1527(c)(2)(i),(ii), 416.927(c)(2)(i),(ii).

The ALJ noted portions of the form completed by NP Klemp's were "not completed fully." (T. 768.) To be sure, portions of the form submitted by NP Klemp were not completed and she indicated a functional capacity evaluation would be required to assess Plaintiff's physical functional limitations. (T. 1282.) Plaintiff argues the provider's credibility is not lessened simply because she chose not to answer additional functional questions without further examination. (Dkt. No. 15 at 22.) However, the ALJ did not rely on the lack of specific functional limitations to undermine the limitations the nurse did provide; instead, the ALJ "highlighted the absence . . . as a marker that [he] considered the evidence [he] had before [him]." *Clayton v. Colvin*, 99 F. Supp. 3d 269 (N.D.N.Y. 2015). The ALJ's intention is reinforced by his next sentence in which he concluded "the limitations that are noted in the form are not consistent with nor are supported by the overall record." (T. 768.) Therefore, the ALJ did not discredit the limitations provided by NP Klemp based on her decision to leave portions of the form blank.

Lastly, the ALJ concluded the limitations that NP Klemp did provide were "not consistent with nor [] supported by the overall record." (T. 768.) Plaintiff argues the ALJ erred in failing to cite to specific treatment notes or exhibits and provided only a conclusory statement. (Dkt. No. 15 at 22.) Plaintiff's argument fails. To be sure, in his discussion of NP Klemp's opinion the ALJ did not cite to specific treatment notes or exhibits; however, the ALJ's reasoning can be gleaned from his decision. *See Mongeur,* 722 F.2d at 1040 (noting that when "the evidence of record permits us to

glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability").

The ALJ concluded NP Klemp's opined limitations were inconsistent with Plaintiff's "assessed intact attention and concentration at this consultative examination, along with the lack of observed cognitive deficits during treatment." (T. 768.) The ALJ further concluded the opined limitations were not supported by notations showing lack of distress or "only mild discomfort." (*Id*.) Indeed, on examination Plaintiff was often observed to be in mild discomfort on examination. (*See ex*. T. 1071, 1075, 1092, 1131 1143.) Elsewhere in his decision, the ALJ specifically cited treatment notations where Plaintiff was observed to be uncomfortable with pain behavior, in no acute distress, and in "mild" discomfort. (T. 764, 767.) Therefore, although the ALJ did not cite to specific treatment notes in weighing NP Klemp's opinion, the ALJ's reasoning can be gleaned from the decision in which the ALJ cited treatment notations supporting his determination.

Therefore, contrary to Plaintiff's assertion, the ALJ considered the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in assessing NP Klemp's opinion. Although the ALJ did not cite specific evidence to support his conclusion in his discussion of the nurse's opinion, the ALJ notes the evidence he relied on and his reasoning can easily be gleaned from his decision.

**B. RFC Determination**

Plaintiff argues "the ALJ had no opinion to support his RFC finding as to Plaintiff being able to frequently handle and finger." (Dkt. No. 15 at 26.)[3] Plaintiff argues, because the ALJ had no opinion to support this portion of the RFC determination, he therefore relied on his own lay opinion to create a limitation. (*Id*. at 27.)

In general, the RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Plaintiff, citing SSR 83-10, asserts an RFC is a "medical assessment" and therefore because it is a medical assessment it is error for the ALJ, a lay person, to make a determination without medical reports specifically explaining the scope of Plaintiff's work related capabilities. (Dkt. No. 15 at 24-25 citing SSR 83-10, *Johnson v. Colvin*, No 15-CV-649, 2016 WL 4472749, at *5 (W.D.N.Y. Aug. 25, 2016).)

To be sure, SSR 83-10 defines an RFC as "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)." Although the SSR uses the term "medical" in its definition of RFC, the RFC determination is nonetheless reserved to the Commissioner.

As outlined in the regulations:

> [w]e use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as [. . .] your residual functional capacity (see §§ 404.1545 and 404.1546), [. . .] the final responsibility for deciding these issues is reserved to the Commissioner.

---

[3] Plaintiff does not challenged any other element of the ALJ's RFC determination.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Therefore, regardless of whether the term medical is used to define the RFC, the final responsibility for deciding a plaintiff's RFC is reserved to the Commissioner, not a medical source.

In addition, an ALJ's factual findings, such as the RFC determination, "shall be conclusive" if supported by "substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, 203 L. Ed. 2d 504 (2019); 42 U.S.C. § 405(g). Substantial evidence "means - and means only - 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek,* 139 S. Ct. at 1154.

Caselaw from this Circuit further supports the conclusion that an ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion. Where the record contains sufficient evidence from which an ALJ can assess a plaintiff's RFC, a medical source statement or formal medical opinion is not necessarily required. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017); *see Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (remand not required to obtain a treating source opinion where the record contained sufficient evidence from which the ALJ could assess plaintiff's RFC).

Here, although no medical source specifically opined Plaintiff could frequently handle and finger objects, the ALJ's RFC limitation was supported by substantial evidence in the record. In making his determination, the ALJ relied on Plaintiff's testimony, objective medical evidence, and other medical evidence in the record. The ALJ noted Plaintiff's testimony he had shooting pains down his arms, trouble reaching, difficulty lifting things, trouble using his hands, and

frequent dropping of objects. (T. 764, 883-884, 886.) The ALJ noted objective medical testing supporting Plaintiff's diagnosis of carpal tunnel syndrome. (T. 764.) The ALJ considered observations of normal strength, intact sensation, and examination of Plaintiff's upper extremities showing full range of motion. (T. 765.)

The ALJ considered evidence provided by Kevin Lanigan, M.D. who observed Plaintiff's ability to make a fist, extend and flex without pain or triggering. (T. 766.) The ALJ further considered the observations of consultative examiner, John Schwab, D.O., that Plaintiff had intact hand and finger dexterity and 5/5 grip strength. (T. 286, 766.) Another consultative examiner, Nikita Dave, M.D., observed intact hand and finger dexterity, 5/5 grip strength, ability to zipper and buckle. (T.1059.) Dr. Dave opined Plaintiff should avoid sharp instruments and machinery due to intermittent hand complaints; however, the doctor provided no other manipulative limitations. (T. 1060.) Although Plaintiff faults the ALJ for providing additional manipulative limitations in the RFC, Plaintiff fails to provide evidence of greater limitations. *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff had a duty to prove a more restrictive RFC, and failed to do so). Therefore, although the ALJ's limitation to frequent handling and fingering did not mirror a specific medical opinion, the ALJ's limitation was consistent with the record as a whole.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: December 2, 2021

William B. Mitchell Carter
U.S. Magistrate Judge